## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JOSHUA CURTIS CLARK,            *

                           *

     Petitioner,           *

                           *

vs.                       * CRIMINAL NO. 15-00215-CG-B

                           * CIVIL ACTION NO. 18-00135-CG

UNITED STATES OF AMERICA,    *

                           *

     Respondent.           *


## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Joshua Curtis Clark's Motion to Vacate (Doc. 58), the Government's response in opposition (Doc. 60), Petitioner's reply (Doc. 62), Petitioner's Motion to Amend his § 2255 motion (Doc. 61), the Government's response in opposition (Doc. 64), and Petitioner's Motion to Expand the Record (Doc. 67). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary

---

[1] The Honorable Senior United States District Judge Callie V.S. Granade presided over the guilty plea hearing and sentencing in this action. The undersigned has reviewed Petitioner's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade.

hearing is necessary for the disposition of this matter.[2]

Upon consideration, and for the reasons stated herein, the undersigned hereby **RECOMMENDS** that Clark's Motion to Amend his § 2255 motion (Doc. 61) be **DENIED**, that Clark's Motion to Vacate (Doc. 58) be **DENIED**, and that Clark's Motion to Expand the Record (Doc. 67) be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Joshua Curtis Clark. The undersigned also recommends that should Clark file a certificate of appealability, it should be denied, as he is not entitled to appeal *in forma pauperis*.

## I.   PROCEDURAL BACKGROUND

Clark was indicted on September 23, 2015, for four (4) counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts One, Two, Three, and Five); and two (2) counts of possessing stolen firearms, in violation of 18 U.S.C. § 922(j) (Counts Four and Six). (Doc. 1). On December 15, 2015,

---

[2] A district court is not required to hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required when the petitioner's allegations are affirmatively contradicted by the record." Id. (quoting Guerra v. United States, 588 F.2d 519, 521 (5th Cir. 1979)).

Clark entered into a plea agreement with the Government. (Doc. 23). He pled guilty to Count Five of the indictment, being a felon in possession of a firearm, and the Government agreed to dismiss the remaining counts. (Id.; Doc. 46). On April 6, 2016, Clark was sentenced to a term of imprisonment of ten years. (Doc. 46 at 2). On that same date, Clark filed a notice of appeal. (Doc. 36). His sentence was affirmed by the Eleventh Circuit Court of Appeals on January 17, 2017.[3] (Docs. 52, 53).

On March 15, 2018, Clark filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.[4] (Doc. 58). In his motion, Clark advances two (2) grounds that entitle him to relief: (1) ineffective assistance of trial counsel; and (2) breach of plea agreement. (Id. at 4-5). Specifically, Clark contends that his trial counsel rendered ineffective assistance when he failed to advance the argument of "entrapment" in Clark's defense and when he failed to properly advise Clark of the potential sentencing

---

[3] On direct appeal, Clark's newly-appointed attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). (Doc. 52). The Eleventh Circuit Court of Appeals affirmed Clark's conviction and sentence, finding "no arguable issues of merit." (Id.).

[4] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed). See Taylor v. Williams, 528 F.3d 847, 849 n.3 (11th Cir. 2008); Rodriguez v. United States, 279 Fed. Appx. 753, 753 (11th Cir. 2008).

guideline range that he faced. (Doc. 58-1 at 3, 21-22, 24-25).
Further, Clark contends that the Government breached its plea
agreement because it failed "to provide an opportunity to earn a
substantial assistance motion." (Id. at 27).

In its response in opposition, the Government contends that
Clark is not entitled to relief on either of his claims. (Doc.
60). The Government maintains that Clark's trial counsel did not
render unconstitutionally ineffective assistance of counsel (id.
at 3-8); that Clark waived the ability to assert entrapment as a
defense (id. at 8-9); that Clark's breach of plea claim is
procedurally defaulted because it was not raised on direct appeal
(id. at 17); and that the plain language of a plea agreement belies
a claim of breach. (Id.). On April 30, 2018, Clark filed a motion
to amend his § 2255 motion to include a claim of ineffective
assistance of *appellate* counsel for that counsel's failure to raise
the breach of plea claim on appeal. (Doc. 61 at 2). The Government
filed a response in opposition to Clark's motion to amend, alleging
that it is both untimely and futile. (Doc. 64). On April 8, 2019,
Petitioner filed a motion to expand the record to include certain
ATF records relating to an incident that occurred on June 25, 2015,
when Petitioner refused to participate in an illegal gun scheme.
(Doc. 67).

The Court will consider each of Petitioner's motions in turn.

## II.  ANALYSIS

### A. Motion to Amend § 2255 Motion to Vacate.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that:

> (f) A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of --
>
>> (1) the date on which the judgment of conviction becomes final;
>>
>> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>>
>> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  As noted, *supra*, Clark requests that the Court allow him to amend his petition to include a claim of ineffective assistance of *appellate* counsel for counsel's failure to include a claim of breach of plea agreement in his Anders brief.[5]

---

[5] An Anders, or no-merit, brief is a brief filed by a criminal defendant's court-appointed attorney when that attorney wishes to withdraw from the case on appeal due to the attorney's professional belief that the appeal is frivolous.  See Anders v. California, 386 U.S. 738 (1967).

(Doc. 61).  The Government opposes Clark's motion on the grounds that is untimely, that it does not relate back to his original claims, and that it is frivolous.[6]  (Doc. 64).

A review of the docket reflects that Clark was sentenced on April 6, 2016. (Doc. 46 at 1). He appealed his sentence to the Eleventh Circuit Court of Appeals, which issued a judgment affirming his sentence on January 17, 2017. (Docs. 52, 53).  Since Clark did not file a petition for writ of certiorari with the United States Supreme Court, the judgment of the Eleventh Circuit became final ninety (90) days after it was issued, or on April 17, 2017.  See U.S. Sup. Ct. R. 13.1; Clay v. United States, 537 U.S. 522 (2003).  Accordingly, under the AEDPA, Clark had one year, or until April 17, 2018, in which to timely file a motion for post-conviction relief.  Here, the Court notes and Respondent acknowledges that, Clark timely filed his § 2255 motion. (Docs. 58 at 13; 64 at 3).  However, Clark's proposed amendment is untimely because it was filed on April 30, 2018, more than one year after the Eleventh Circuit's judgment. (Doc. 61 at 2).

Prior to recommending that Clark's motion to amend his § 2255

---

[6] Having decided that Clark's claim does not relate back to the original petition, the Court need not decide whether it is frivolous.

motion be denied, the Court must determine whether his proposed amendment relates back to his original claims. Under Federal Rule of Civil Procedure 15, an amendment may relate back to the date of the original claim if the proposed amendment arose out of the same conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). Relation back causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed. Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000). For an amendment to relate back to the original claims, "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." Johnson v. United States, 2013 WL 5566484, *5, 2013 U.S. Dist. LEXIS 145003 (M.D. Ga. Oct. 8, 2013). "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." Davenport, 217 F.3d at 1344 (internal quotations omitted); Ennis v. United States, 2006 WL 2715126, *6, 2006 U.S. Dist. LEXIS 68737 *20-22 (S.D. Ala. Sept. 22, 2006).

Here, while Clark raised both ineffective assistance of counsel and breach of plea claims in his original motion, the Court finds that his proposed new claim does not relate back to his

timely claims. Clark's new claim alleges that his *appellate* counsel was ineffective for his alleged failure to raise a breach of plea claim on appeal. This claim does not relate back to his timely claim that his *trial* counsel was ineffective for failure to raise the entrapment defense, as the claims involves completely separate and distinct facts. Further, Clark's new claim does not relate back to his timely-filed breach of plea claim because the determinations of whether the Government breached its plea agreement and whether Clark's appellate counsel was ineffective for failing to argue that point on appeal depend upon wholly different facts about what the Government may have done and what counsel did and did not do. See Ennis, 2006 WL 2715126 at *6. Accordingly, the new claim does not relate back to Clark's timely-filed claims, regardless of its tangential connection to Clark's breach of plea claim, and Petitioner's Motion to Amend his Motion to Vacate (Doc. 61) is due to be denied.

**B. Motion to Vacate.**

**1. Additional Facts and Proceedings.**

As discussed, on December 11, 2015, Clark's appointed counsel advised the Court of Clark's desire to enter into a counseled plea agreement, whereby Clark agreed to plead guilty to Count Five of the indictment, possession of a firearm by a prohibited person, a

violation of 18 U.S.C. § 922(g)(1).[7]  (Doc. 22).  As part of the plea agreement, Clark agreed to waive his right to file "any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255."  (Doc. 23 at 11).   However, Clark reserved his right to timely file a direct appeal challenging any sentence imposed in excess of the statutory maximum or any sentence which constituted an upward departure or variance from the guideline range, and Clark also reserved his right to claim ineffective assistance of counsel in a direct appeal or a 28 U.S.C. § 2255 motion.   (Id. at 12).   In return, the Government agreed that it would not bring any additional charges against Clark related to the facts underlying the indictment, that it would move to dismiss any remaining charges, and that it would recommend to the Court that Clark be sentenced at the low end of the advisory sentencing guideline range, as determined by the Court.   (Id. at 6).   The Government also agreed that if, *in its sole discretion*, it agreed to allow Clark to cooperate, and if Clark provided substantial assistance in the investigation or prosecution of another criminal offense, the Government would move

_____

[7] Attached to the plea agreement was a factual resume that outlined the elements of the offenses and the facts supporting Clark's plea to the offenses.  (Doc. 23 at 15).

for a downward departure in accordance with U.S.S.G. § 5K1.1 or would file a Rule 35 motion pursuant to the Federal Rules of Criminal Procedure. (<u>Id</u>. at 6-11). The Government further agreed that if Clark's cooperation did not amount to substantial assistance, as determined by the Government, the Government would recommend that Clark be sentenced at the low end of the sentencing guidelines range. (<u>Id.</u> at 9).

On December 16, 2015, Clark entered a plea of guilty to count five of the indictment, charging the offense of possession of a firearm by a prohibited person. (Doc. 25). During the guilty plea hearing, Clark was placed under oath and Judge Granade questioned him regarding the voluntariness of his plea. Clark testified as follows:

> THE COURT: Have each of you[8] received a copy of the Indictment, the written charges in your case?
>
> DEFENDANT CLARK: Yes, ma'am.
>
> THE COURT: Have you fully discussed those charges and the case in general with your lawyer?
>
> DEFENDANT CLARK: Yes, ma'am.
>
> THE COURT: Do you understand the charges pending against you?
>
> DEFENDANT CLARK: Yes, ma'am.

---

[8] At the guilty plea hearing, the Court addressed two Defendants simultaneously. Only the portions relevant to Clark are quoted herein. (Doc. 48).

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in your case by your lawyer?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: All right. Now, for each of you I have been provided with a written plea agreement and a factual resume. I want you to look at those documents and tell me on the record whether that is your plea agreement and factual resume and whether you signed those documents.

THE COURT: And Mr. Clark?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Did each of you have the opportunity to read and discuss the plea agreement and factual resume with your lawyer before you signed it?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Do you have any agreements with the government concerning your case that are not written down in your plea agreement?

DEFENDANT CLARK: No, ma'am.

THE COURT: Do you understand the terms of your plea agreement?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Has anyone made any promise or assurance to you of any kind that is not in the plea agreement in order to persuade you to accept the plea agreement?

DEFENDANT CLARK: No, ma'am.

THE COURT: Has anybody threatened you in any way to get you to accept it?

DEFENDANT CLARK: No, ma'am.

THE COURT: Do you understand that certain of the terms of your plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that's more severe than you might anticipate?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

DEFENDANT CLARK: No, ma'am.

THE COURT: Has anybody threatened you to get you to plead guilty?

DEFENDANT CLARK: No, ma'am.

THE COURT: Has anybody made any promises or assurances of any kind other than what is in the plea agreement to get you to plead guilty?

DEFENDANT CLARK: No, ma'am.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

DEFENDANT CLARK: Yes, ma'am.

. . .

THE COURT:. . . Mr. Clark, in your case the maximum term of imprisonment the Court could impose upon the conviction of count five would be up to 10 years' imprisonment, a fine not to exceed $250,000, a term of supervised release of up to three years which would follow any term of imprisonment, if you violated the conditions of supervised release you could be imprisoned for that entire term, a mandatory special assessment of $100 and any restitution the Court finds is appropriate. There's an enhancement provision that goes with this statute. I don't know if it applies in your case. But if it does apply, if you have three prior convictions of either serious drug offenses or

violent crimes of violence, then the minimum term of imprisonment will be 15 years, maximum of life, and the term of supervised release would be five years. As I said, I don't know if they apply. But you need to understand that if they do apply, that would be the penalty.

MR. JORDAN: Judge, just for the record, I have researched that and discussed that with both the U.S. Attorney's Office and probation office and we have all three understood it does not apply and that's at least what I've advised my client.

THE COURT: Well, I'm just telling you if the probation office comes up with some conviction that your lawyer hasn't found and it does apply, that would be the penalty. Do you understand that?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Okay. Now, the United States Sentencing Commission has issued sentencing guidelines for judges to consider when determining the sentence in a criminal case. Have you and your lawyer talked about how the sentencing guidelines might affect your sentence?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Do you understand that the Court will not be able to determine the advisory guideline range for your case until after the probation office has prepared a presentence report and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the sentence ultimately imposed may be different from any estimate your attorney or anybody else might have given you in this case?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Do you also understand that after your initial advisory guideline range has been determined, the Court has the authority to depart either upwards or downwards from that range and

will also examine other statutory sentencing factors which may result in the imposition of a sentence that's either greater than or lesser than that called for by the sentencing guidelines?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that is imposed? However, each of your plea agreements contains a limited waiver of your right to appeal and in your case you have retained the right to appeal only if sentence is imposed in excess of the statutory maximum, if sentence is imposed that constitutes an upward departure or variance from the sentencing guideline range, or if you have a claim of ineffective assistance of counsel. Do you understand that you have waived your right to appeal in all but those three circumstances outlined in your plea agreement?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: Do you also understand that in your plea agreement you have waived your right to file a 2255 petition, or a collateral attack on your conviction or sentence after it becomes final, unless you have a claim of ineffective assistance of counsel?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: All right. Do each of you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea and that you would then have the right to a trial by jury, at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas to compel the attendance of witnesses to

testify in your defense?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: And do you understand that if you went to trial and decided not to testify or to put on any evidence at all, those facts could not be used against you?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: And do you further understand that by entering a plea of guilty, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I've just described?

DEFENDANT CLARK: Yes, ma'am.

. . .

THE COURT: All right. And, Mr. Clark, in your case in order to convict you of the possession of a firearm by a prohibited person, the government would have to prove that you knowingly possessed the firearm alleged in the indictment in or affecting interstate commerce, as charged, and that when you possessed that firearm you had previously been convicted of a crime punishable by imprisonment for in excess of one year; that is, a felony offense. Do you understand what the government would have to prove in order to convict you of that offense?

DEFENDANT CLARK: Yes, ma'am.

THE COURT: All right. Now, I asked each of you earlier if you had signed the factual resume attached to your plea agreement. You said you had. And I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in that document in support of your guilty plea. Do you understand and agree to that?

DEFENDANT CLARK: Yes, ma'am.

> THE COURT: All right. I have read those. So I'll
> now ask you how do you plead to the charge, guilty
> or not guilty?
>
> DEFENDANT CLARK: Guilty, Your Honor.

(Doc. 48 at 5-15). The Court accepted Clark's guilty plea and expressly found that he was fully competent and capable of entering an informed plea and that his plea of guilty was knowing and voluntary. (Id. at 15).

Clark's sentencing hearing was conducted on April 6, 2016. (Doc. 46). Clark was sentenced to 120 months of imprisonment as to count five. (Docs. 46, 50).

On April 6, 2016, Clark's attorney filed a Notice of Appeal. (Doc. 36). His newly-appointed attorney filed an Anders brief, and the Eleventh Circuit Court of Appeals affirmed Clark's conviction and sentence after reviewing the entire record and finding no arguable issues of merit. (Doc. 52).

Clark filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on March 15, 2018. (Doc. 58). The Court will consider each of Petitioner's claims in turn.

### 2. **Habeas Standard**.

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may
> not do service for a[ ] [direct] appeal." United States
> v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed.

16

2d 816 (1982); see also Lynn v. United States, 365 F.3d
1225, 1232 (11th Cir. 2004)("Courts have long and
consistently affirmed that a collateral challenge, such
as a § 2255 motion, may not be a surrogate for a direct
appeal.").  A defendant who has waived or exhausted his
right to appeal is presumed to stand "fairly and finally
convicted."  Frady, 456 U.S. at 164.  Unless a claim
alleges a lack of jurisdiction or constitutional error,
the scope of collateral attack has remained extremely
limited.  United States v. Addonizio, 442 U.S. 178, 185,
99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979).  Consequently,
"[i]f issues are raised and considered on direct appeal,
a defendant is thereafter precluded from urging the same
issues in a later collateral attack. . . . A defendant
is, of course, entitled to a hearing of his claims, but
not to duplicate hearings.  The appellate process does
not permit reruns."  Moore v. United States, 598 F.2d
439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, *8-9, 2008 WL
3200694, *3 (S.D. Ala. Aug. 6, 2008).

### 3. **Ineffective Assistance of Counsel**.

"Ineffective assistance of counsel claims are governed by the
standard set forth by the Supreme Court in Strickland v.
Washington, 466 U.S. 668 (1984)." Green v. Nelson, 595 F.3d 1245,
1249 (11th Cir. 2010).  "An ineffective assistance claim has two
components: A petitioner must show that counsel's performance was
deficient, and that the deficiency prejudiced the defense."
Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 466
U.S. at 687).  The two-part Strickland standard applies to
challenges to the validity of guilty pleas based on claims of
ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S.
52, 58 (1985). Because the failure to demonstrate either deficient

performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218 F.3d at 1314. Moreover, "[e]ven if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle v. Secretary for Dep't of Corrs., 480 F.3d 1092, 1099 (11th Cir. 2007)(citations omitted). Indeed, reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F. 3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated

with a high degree of deference and without the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.

With regard to the prejudice requirement, a defendant generally must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).  "[U]nder the exacting rules and presumptions set forth in *Strickland*, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Windom v. Secretary, Dep't of Corr.*, 578 F.3d 1227, 1248 (11th Cir. 2009) (citation omitted).

### a. Entrapment Defense.

Clark asserts first that his trial counsel was ineffective for failing to investigate and advise him of the possibility of an "entrapment" defense.  (Doc. 58-1 at 3).  The Government counters that Clark waived any pre-plea right to assert entrapment as a defense, that Clark's plea was knowing and voluntary, and that

Clark's trial counsel did not render unconstitutionally ineffective assistance of counsel. (Doc. 60 at 8-16). Based upon a careful review of Clark's petition and the record evidence, the undersigned finds that Clark has failed to demonstrate that his counsel provided ineffective representation in this regard.

The Court notes at the outset that, after a defendant has pleaded guilty, "he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to entry of the guilty plea, but instead may only raise jurisdictional issues, attack the knowing and voluntary nature of the guilty plea, or challenge the constitutional effectiveness of the assistance he received from his counsel in deciding to plead guilty." Singleton v. United States, 2019 U.S. Dist. LEXIS 225955, *12, 2019 WL 7790435, *5 (S.D. Ala. Dec. 23, 2019), *report and recommendation adopted*, 2020 WL 475819 (S.D. Ala. Jan. 29, 2020)(citing Maldonado v. United States, 2012 U.S. Dist. LEXIS 198145, *25, 2012 WL 12964798, *8 (S.D. Fla. Apr. 27, 2012), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 201121, 2013 WL 12212532 (S.D. Fla. Nov. 12, 2013)).

Here, Clark argues that he entered into the plea agreement with the Government only because his counsel failed to investigate and advise him of the possibility of an entrapment defense and that such conduct by his attorney constitutes ineffective

assistance of counsel.  (Doc. 58-1 at 3).  As discussed, Strickland's two-part standard applies to ineffective assistance of counsel claims arising out of the plea process.  See Hill v. Lockhart, 474 U.S. 52, 57 (1985).  In this context, the first prong of Strickland requires that Clark show that his plea was not voluntary and intelligent because he received advice from counsel that "fell below an objective standard of reasonableness[,]" and the second prong requires Clark to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 57-59.  Indeed, Clark has the burden of affirmatively proving prejudice.  Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000). A bare allegation that he would not have pleaded guilty is insufficient to establish prejudice.  Roach v. Roberts, 373 Fed. Appx. 983, 985 (11th Cir. 2010).

In this case, Clark's claim that his trial counsel did not investigate or discuss the possibility of an entrapment defense with him and, further, that he would not have pleaded guilty if he had been aware of the possibility of this defense is contradicted by his own statements in his petition that he did discuss a possible entrapment defense with his trial counsel on multiple occasions, both prior to and after his guilty plea, and that his trial counsel advised him that the defense would not work.  (Doc.

58-1 at 3, 5, 8-11, 13, 15-18, 29). While Clark claims that this advice was incorrect, ineffective, and inadequate, he clearly acknowledges that the issue was raised repeatedly and rejected by his trial counsel. (Id.).

It is well settled that "[e]ntrapment is an affirmative defense that requires (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to commit the crime before the inducement." Carver v. United States, 2019 U.S. Dist. LEXIS 148499, *18, 2019 WL 4545007, *6 (S.D. Fla. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4540807 (S.D. Fla. Sept. 19, 2019)(citing United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir. 2007); United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002)). Clark claims that he had no predisposition to commit the crime for which he was convicted, namely, possession of a gun by a felon, and he maintains that he shared the following evidence to support that fact with his trial counsel before he pleaded guilty: (1) On June 25, 2015, the day before he brokered the first of four gun deals with a confidential informant and an undercover ATF agent, Clark met the confidential informant at a motel in Tillman's Corner, Alabama, and when the confidential informant informed Clark that he wanted him to broker a gun deal, Clark refused to participate and left (Doc. 58-1 at 11); 2) Clark also told his trial counsel about a witness, Christina Hand, who

he asked to call the confidential informant on his behalf and inform the confidential informant that Clark did not wish to be involved with brokering the sale of guns and wished to be left alone. (Id. at 9-11). Clark argues that his attorney should have requested records from the ATF to show that Clark had walked away from the first encounter with the confidential informant, and he should have confirmed with Christina Hand that he had pleaded with the confidential informant to leave him alone. Clark maintains that if his attorney had pursued this evidence, he "may not have advised [Clark] to plead guilty and may have informed [Clark] of the possibilities of the entrapment defense," and then Clark would not have pleaded guilty. (Id. at 5, 10).

This argument fails for several reasons. First, Clark does not provide any basis for his belief that there is an ATF report or other evidence in the possession of the ATF showing that Clark refused to participate in brokering a gun deal with the confidential informant on June 25, 2015.[9] Furthermore, even assuming, as Clark claims, that evidence existed that he refused to broker a gun deal on June 25, 2015, given the evidence that on June 26, July 6, and July 9, 2015, Clark arranged, personally

_____

[9] The undisputed evidence shows that, the following day, June 26, 2015, Clark did broker a gun deal between the confidential informant and two unidentified males and personally sold a handgun to the confidential informant. (Doc. 23 at 16).

conducted, and/or brokered no less than four gun deals involving the confidential informant and, at times, an undercover ATF agent, his entrapment defense appears weak at best. (Doc. 58-1 at 12, 14; Doc. 23 at 16-18). Particularly damning is the evidence recounted in the factual resume that on July 6, 2015, after brokering a gun deal between the ATF agent and a third party, Clark took it upon himself to volunteer to sell the undercover agent a pistol that "he had stored at a nearby house." (Doc. 23 at 17). Clark directed the undercover agent and the confidential informant to a residence on Cottage Hill Road, and, upon arriving, entered the residence and came back out a short time later with a handgun, which he sold to the undercover agent for $260. (Id.). The entire transaction was audio/video recorded. (Id.). Assuming, *arguendo*, that Clark's attorney had obtained evidence that Clark had walked away from brokering a gun deal with the confidential informant on June 25, 2015, and that Christina Hand had, as Clark claims, told the confidential informant that Clark did not want to broker gun deals for him, such evidence necessarily would be called into question by the undisputed evidence that Clark subsequently volunteered to obtain, broker, and/or directly sell handguns to the confidential informant on June 26, 2015, and to the undercover agent on July 6, and July 9, 2015. (Doc. 23 at 16-17). Moreover, the evidence which Clark claims would have shown a lack of a

predisposition to *broker the sale of guns* (namely, that he walked away from the opportunity to broker a gun deal and had Christina Hand tell the confidential informant to leave him alone), would not tend to establish the lack of a predisposition to *possess* guns, which is the charge for which he was convicted, particularly given the undisputed evidence that on July 6, 2015, Clark volunteered to procure a handgun that he had stored (and obviously possessed) at a residence and sold to the undercover agent. (Doc. 23 at 17).

The foregoing evidence indicates that Clark's trial counsel's decision to forego an entrapment defense was a reasoned decision based on conflicting evidence that, in the balance, appeared to disfavor Clark, making the recommendation of a plea agreement sound trial strategy. The law is well settled that an attorney is not obligated to advance a meritless position. See Deverso v. United States, 2011 U.S. Dist. LEXIS 12945, *51, 2011 WL 550205, *19 (M.D. Fla. Feb. 9, 2011) ("[A]n attorney need not advance a meritless position on behalf of his client."). As such, Clark has failed to show that counsel's representation in this case fell below an objective standard of reasonableness.

Moreover, Clark has failed to show that he would not have pleaded guilty but for counsel's failure to investigate and advise him about an entrapment defense. At his guilty plea hearing, Clark acknowledged that he received a copy of the indictment and the

charges against him; that he fully discussed the charges and the case in general with his attorney; that he was fully satisfied with the representation and advice provided by his counsel; that he understood that he had a right to plead not guilty and proceed to a trial by jury and that, by entering a guilty plea, he would be adjudicated guilty for the charged offense; that no one had made him any promises or assurances of any kind to induce his guilty plea, nor had anyone attempted to force him to plead guilty; that the Government had provided the factual basis to support his guilty plea, and that all of the facts contained in the factual resume were correct and true. (Doc. 48 at 5-15).

In addition, Clark signed a written plea agreement which informed him of his rights and the factual allegations against him. As part of the agreement, Clark indicated that he had discussed the facts of the case with his attorney, that his attorney had explained the essential legal elements of the criminal charge which had been brought against him, that his attorney had explained his understanding of the Government's evidence and the law as it related to the facts of the offense, that Clark and his counsel had discussed possible defenses to the charge, that Clark believed that his attorney has represented him faithfully, skillfully, and diligently, and that Clark was completely satisfied with the legal advice of his attorney. (Doc 23 at 2-

14).

In order for a plea to be knowing and voluntary, the court accepting the plea must ensure that: "(1) the guilty plea is voluntary and free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant knows and understands the consequences of his plea." Carver, 2019 U.S. Dist. LEXIS 148499 at *19, 2019 WL 4545007 at *6.  Courts apply a "strong presumption" that statements made by a defendant during his plea colloquy are true.  United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994); Knight v. Secretary Fla. Dep't of Corrs., 2017 WL 5593485, *5 (11th Cir. Aug. 22, 2017).  See also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)(explaining that "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").  When challenging the knowingness and voluntariness of a plea, the representations of the defendant at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

In this case, the colloquy between Clark and the district judge shows that Clark's plea was voluntary.  Indeed, at no time did Clark indicate that he would like to withdraw his guilty plea for any reason.  The guilty plea hearing transcript reveals that Clark voluntarily pleaded guilty with a full understanding of the

charges, defenses, and potential consequences.  The district judge made it abundantly clear to Clark that he was not being forced to plead guilty and that he could proceed to trial if he wished, and Clark stated that it was his decision to plead guilty because he was guilty.  Thus, even assuming, *arguendo*, that Clark's trial counsel's advice about the possibility of an entrapment defense was incorrect, Clark cannot show prejudice, as the evidence does not support his contention that he would not have pleaded guilty if his counsel had only further investigated and further advised him about the possibility of the defense.

In sum, Clark's conclusory assertions do not demonstrate that his attorney was ineffective or that his case was prejudiced.  See Randolph v. McNeil, 590 F.3d 1273, 1276 n.1 (11th Cir. 2009) (holding that "conclusory assertions" will not support a claim of ineffective assistance of counsel); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (same); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (addressing the issue in the context of 28 U.S.C. § 2254); Story v. United States, 2012 U.S. Dist. LEXIS 26031, at *20, 2012 WL 671677, at *6 (S.D. Ala. Jan. 31, 2012) (rejecting § 2255 claim of ineffective assistance where movant had not indicated what a more thorough investigation by his attorney would have revealed or how any supposed discovery would have been fruitful in his case).

Accordingly, Clark's ineffective assistance of counsel claim based on failure to investigate and failure to pursue an entrapment defense must fail.

### b. Failure to Advise Concerning Potential Sentencing Guidelines Range.

Next, Clark asserts that his trial counsel rendered ineffective assistance when he failed to properly advise Clark of the potential sentencing guidelines range that he faced. (Doc. 58-1 at 20-25). Specifically, Clark contends that his attorney advised him that "he was confident that petitioner would receive no more than 92 months sentencing guideline exposure and that if petitioner plead guilty quickly petitioner would receive a 3 level reduction from the 92 month guideline range."[10] (Id. at 20). Clark claims that his counsel's advice concerning his potential sentencing guidelines range was incorrect and that, but for the faulty advice, he would not have pleaded guilty. (Id. at 21). This claim is likewise without merit.

In his plea agreement, Clark acknowledged that he faced ten years imprisonment on count five, that the guidelines were advisory and did not bind that Court, that no one could predict with certainty what the sentencing range would be until after a pre-

_____

[10] Clark was sentenced to 120 months (ten years) imprisonment as to count five. (Docs. 46, 50).

sentence investigation had been completed, and the Court had ruled on the results of that investigation, that Clark understood that the Court might not sentence him in accordance with the guidelines, that he understood that he would not be allowed to withdraw his guilty plea if the advisory guidelines range was higher than expected or if the Court departed from the advisory guideline range, that Clark understood that the Plea Agreement did not create any right to be sentenced in accordance with the sentencing guidelines or below or within any particular guidelines range, and that he fully understood that determination of the sentencing range or guidelines level or the actual sentence was solely the discretion of the Court. (Doc. 23 at 3-4).

Moreover, during the plea colloquy, Clark, under oath, acknowledged that he had read and signed the plea agreement, that he had discussed it with his attorney, that he was fully satisfied with his attorney's representation, and that no one had promised him anything that was not included in his written plea agreement.[11] (Doc. 48 at 5-7). Furthermore, Judge Granade explained to Clark, and Clark agreed, that he faced a maximum term of imprisonment of ten years upon conviction of count five, that the terms of his plea agreement were merely recommendations to the Court, that the

---

[11] The plea agreement specified that Clark faced ten years imprisonment on count five. (Doc. 23 at 3).

Court could reject those recommendations without permitting Clark to withdraw his plea of guilty and impose a sentence that was more severe than he might anticipate, that the Court would not be able to determine the advisory guidelines range for his case until after the probation office had prepared a presentence report, and he and the Government had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office, that the sentence ultimately imposed might be different from any estimate that his attorney or anybody else might have given him in the case, and that after his initial advisory guidelines range had been determined, the Court had the authority to depart either upwards or downwards from that range and would also examine other statutory sentencing factors which might result in the imposition of a sentence that was either greater than or lesser than that called for by the sentencing guidelines. (Doc. 48 at 7-11). Clark acknowledged that he understood and stated that he was entering a guilty plea because he was guilty. (Id. at 8, 15). As discussed, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74.

The record evidence clearly shows that Clark was fully aware of the potential sentence that he faced and that he entered into his plea of his own volition. Thus, his claim is without merit. See Langford v. United States, 2009 U.S. Dist. LEXIS 127453, *25,

2009 WL 6467043, *9 (S.D. Ala. Oct. 23, 2009), *report and recommendation adopted,* 2010 U.S. Dist. LEXIS 46835, 2010 WL 1949480 (S.D. Ala. May 12, 2010)("Mere disappointment that a court imposed a harsher sentence tha[n] what one hoped for is not the proper basis for a motion to vacate.").

Based on the foregoing, Clark has failed to show that his attorney's performance was deficient and that he suffered prejudice because of it. Accordingly, his ineffective assistance of counsel claims must fail.

### 4. Breach of Plea Agreement Claim.

Next, Clark asserts in his habeas petition that the Government breached the plea agreement by failing "to allow [him] an opportunity to earn a substantial assistance motion." (Doc. 58-1 at 26). The Government responds that Clark's breach of plea claim is procedurally defaulted because it was not raised on direct appeal and, further, that the plain language of a plea agreement establishes the lack of merit of Clark's claim of breach. (Doc. 60 at 17). After review, the Court finds that this claim is without merit.

Because the plain language of the plea agreement belies Clark's claim, the Court need not decide whether the claim is procedurally defaulted, as it is unquestionably without merit. Where, as here, the plea agreement plainly states that the

prosecutor has the sole discretion to decide whether a defendant will be allowed to cooperate and/or whether his cooperation constitutes substantial assistance, such decision cannot support a claim of breach. See, e.g., United States v. Johns, 548 Fed. Appx. 581, 584 (11th Cir. 2013)(where Defendant argued that "his plea agreement created a binding obligation on the government to file a downward departure motion if he provided substantial assistance," the court held that "this argument ignores the plain language of the plea agreement, which provides that the government 'will file' a motion *only* if 'the Government determines,' in its sole discretion, that [Defendant's] cooperation qualifies as substantial assistance. . . . Because the government here determined that [Defendant's] cooperation did not amount to substantial assistance, it did not breach any express promise to file a downward departure motion")(emphasis in original); United States v. Forney, 9 F.3d 1492, 1500-02 n.2 (11th Cir. 1993)(there is no breach where the United States, at most, only "agree[d] to consider" filing a motion recommending a downward departure from the applicable guideline range, and the determination whether to file a motion, if at all, rested solely within the prosecutor's discretion); United States v. Nance, 426 Fed. Appx. 801, 802-03 (11th Cir. 2011)("[W]here a plea agreement states only that the government will file a Rule 35(b) motion if it determines, in its

'sole' discretion, that the defendant's cooperation qualifies as substantial assistance, the government does not breach the agreement by failing to file such a motion, and the district court has no jurisdiction to review the claim of breach.")(citations omitted); United States v. McCloud, 452 Fed. Appx. 899, 901 (11th Cir. 2012)(Defendant could not show any breach of the plea agreement where, "[u]nder the terms of the plea agreement, the government need only consider filing a Rule 35(b) motion, and determination as to whether McCloud provided substantial assistance was solely within the government's purview.").[12]

In this case, the plea agreement expressly provided that "[t]he defendant understands and agrees that he has no right to cooperate, and that the decision *whether to allow him to cooperate* is reserved solely to the United States in the exercise of its discretion." (Doc. 23 at 6)(emphasis added).  The plea agreement further provided that "[i]f the United States *agrees to allow* the defendant to cooperate, and if the defendant agrees to cooperate," then certain additional terms and conditions would apply.

---

[12] Indeed, "courts are precluded from intruding into prosecutorial discretion" except "when there is an allegation and a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion." United States v. Forney, 9 F.3d 1492, 1501-03 (11th Cir. 1993).  No unconstitutional motive has been alleged in this case.

(Id.)(emphasis added).

Accordingly, because the plea agreement in this case expressly provided that the decision whether "to allow" Clark to cooperate was reserved solely to the Government in the exercise of its discretion, Clark's claim that the Government breached the plea agreement by not allowing him to the opportunity to provide substantial assistance must fail.

Accordingly, for each of the foregoing reasons, Petitioner's Motion to Vacate (Doc. 58) is due to be denied.

**C. Motion to Expand the Record.**

In his Motion to Expand the Record, Clark seeks to expand the record to include "all ATF reports of the incident on June 25, 2015, at the location of the assumed sting operation at America's Best Inn in Tillman's Corner, Alabama," when he refused to participate in brokering a gun deal. (Doc. 67 at 2). Clark also seeks to expand the record to include "the ATF agent's report of this specific incident." (Id.). Clark argues that this evidence would support his ineffective assistance of counsel claim based on trial counsel's failure to pursue an entrapment defense. (Doc. 67 at 1). Assuming, *arguendo*, that such evidence exists, the Court has already found, for the reasons set forth in detail herein, that Clark's ineffective assistance of counsel claim based counsel's failure to pursue an entrapment defense (with or without

this presumed evidence), is without merit.

Accordingly, Clark's motion to expand the record to support this meritless claim is due to be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's Motion to Vacate (Doc. 58) be **DENIED**; that Petitioner's Motion to Amend his § 2255 motion (Doc. 61) be **DENIED**; and that that Petitioner's Motion to Expand the Record (Doc. 67) be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on

appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **26th** day of **October, 2020.**

**_/s/ SONJA F. BIVINS_**
**UNITED STATES MAGISTRATE JUDGE**